**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION**

| | | |
|---|---|---|
| **THE FOMO FACTORY, LLC** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | **CIVIL ACTION NO. _____** | |
| § | | |
| **GALLERY MODEL HOMES, INC. D/B/A** § | | |
| **GALLERY FURNITURE AND TOV** § | | |
| **FURNITURE, INC.** § | | |
| § | **JURY TRIAL DEMANDED** | |
| **Defendants.** § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, The FOMO Factory, LLC hereby files this Original Complaint against defendants Gallery Model Homes, Inc. d/b/a Gallery Furniture and Tov Furniture, Inc. for copyright infringement, unfair trade practices and unfair competition, for preliminary injunction and seizure of the infringing articles as set forth below.

### I. PARTIES

1. Plaintiff, The FOMO Factory, LLC, is a limited liability company organized under the laws of the State of Texas.

2. Defendant, Gallery Model Homes, Inc. d/b/a Gallery Furniture, is a corporation that is incorporated under the laws of the State of Texas. Defendant has its principal place of business in the State of Texas and is physically located at 6006 North Freeway, Houston, Texas 77076. Defendant may be served with process by serving its registered agents, James F. McIngvale or Linda L. McIngvale, at 6006 North Freeway, Houston, Texas 77076 or wherever they may be found.

3. Defendant, Tov Furniture, Inc., is a corporation that is incorporated under the laws of the State of New York. Defendant has its principal place of business in the State of New York and is

1

physically located at 333 Washington Ave., Cedarhurst, New York 11516. Defendant is doing business in the State of Texas but does not maintain an office or registered agent in this state. The Texas Secretary of State is an agent for service of process on defendant, Tov Furniture, Inc. under Fed. R. Civ. P. 4(e)(1) and Tex. Civ. Prac. & Rem. Code § 17.042. Service may be accomplished by serving copies of process to the Texas Secretary of State. The Texas Secretary of State may discharge its obligation to notify defendant of service by mailing process to defendant, Tov Furniture, Inc.'s home office located at 333 Washington Ave., Cedarhurst, New York 11516.

## II. JURISDICTION

5. The Court has jurisdiction over the lawsuit under 28 U.S.C. §1338 because the suit arises under federal copyright law, 17 U.S.C. § 101 et seq.

6. The Court also has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because plaintiff and defendant, Tov Furniture, Inc., are citizens of different U. S. states and the amount in controversy exceeds $75,000, excluding interest and costs. Tov Furniture, Inc. is in partnership or has contracted with the other defendants named in this lawsuit in order to do business in Texas and has minimum contacts within the forum state.

## III. VENUE

7. Venue is proper in this district under 28 U.S.C. § 1400 because this is a proceeding arising under an Act of Congress relating to copyrights and may be instituted in the district in which the defendants or their agents reside or may be found.

8. Defendant Gallery Furniture has a principal place of business in this district and therefore resides in this district under 28 U.S.C. § 1400.

9. Defendant Tov Furniture purposely transacts business activities within Defendant Gallery Furniture's store location(s) in this district, the asserted claims arising out of those activities.

Therefore, it is reasonable and fair to assert that Defendant Tov Furniture is subject to the court's personal jurisdiction with respect to this civil action in question under 28 U.S.C. §§ 1391(c)(2) and 1391(d) and therefore resides in this district under 28 U.S.C. § 1400.

11.     Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. Specifically, the plaintiff business operated within the district and the copyrighted works that have been infringed are located in the district. The defendant businesses displayed the infringing works within the district.

12.     Venue is also deemed proper in this district under 28 U.S.C. § 1391(b)(3) because at least one defendant is subject to the court's personal jurisdiction in this district with respect to this action.

### IV.  FACTS

13.     The FOMO Factory, LLC is an entity formed on June 14, 2018 by its founder and owner, Rachel Youens. The FOMO Factory's business is the creation of interactive entertainment spaces. These interactive entertainment spaces are also known as "immersive art pop-ups." The idea behind these creative spaces is to give people an opportunity to take photographs of themselves or with others with interesting and creative backdrops and props with the purpose of posting these photographs on the internet, primarily on social media websites like Instagram or Facebook.

14.     Rachel Youens was a creative visionary. Although The FOMO Factory was not the first art installation of its type, Ms. Youens was an early adopter and was able to successfully transform her unique vision into a successful business. She first opened The FOMO Factory in Austin, Texas for a six-month run that began in September 2018. Ms. Youens' ideas-come-to-life proved to be not only a warm and fun environment for people to enjoy and express themselves, but also a

profitable business venture. On the strength of the Austin showing, Ms. Youens decided to bring The FOMO Factory to Houston.

15. Ms. Youens and her father and mother, Robert and Deborah Youens, built out the company's new space in the Houston Galleria and created a new setting for The FOMO Factory. They did all of the build-out and construction work themselves. They often slept overnight in the space while they were working on it. The FOMO Factory in Houston eventually took shape and was set for a June 2019 opening for another six-month run that was to extend through the end of the year. For Ms. Youens, this was quite literally her dream come true. She had sunk all of her savings into The FOMO Factory; her parents had made significant loans to the company for the buildout and opening. Ms. Youens and her family had high hopes, and for good reason.

16. The FOMO Factory was one of the first businesses of its kind in Houston and was in a rapidly expanding market space. When Ms. Youens approached the Galleria management about leasing space there, they were very excited to have her and her business. Pop-up shops, particularly those followed on social media, are known to bring foot traffic, which the Galleria wanted. In fact, other malls with sagging foot traffic numbers, ironically due to the prevalence of online shopping, reached out to Ms. Youens about the possibility of opening more The FOMO Factory installations in other cities throughout the country.

17. The FOMO Factory's interactive experience consists of seventeen separate rooms, each with a different theme. The inspiration for The FOMO Factory drew in part on adult summer camps, which Ms. Youens herself had attended, as well as childhood and youthful experiences. Each room contains one or more separate copyrighted art installations or "works" (collectively "the works"). Ms. Youens hired an outside artist to assist in the creation of the works displayed in these rooms. The FOMO Factory owns all rights in the works, including all rights from the

artist pursuant to a written assignment agreement wherein the artist assigned to The FOMO Factory all Work Product, namely:

> The product of all work performed under this Agreement ("Work Product"), including without limitation all notes, reports, documentation, drawings, computer programs, inventions, creations, works, devices, models, work-in-progress and deliverables will be the sole property of the Owner [The FOMO Factory], and Contractor [Kara Whitten] hereby assigns to the Owner all right, title, and interest therein, including but not limited to all audiovisual, literary, moral rights and other copyrights, patent rights, trade secret rights and other proprietary rights therein. Contractor retains no right to use the Work Product and agrees not to challenge the validity of the Owner's ownership in the Work Product.

18. The FOMO Factory's interactive displays include a birthday party room with a giant cake that a person can jump out of and walls covered with multicolored cupcakes. There is lab room, reminiscent of a high school lab, complete with chalkboard, lab equipment and white lab coats. There is a large ball pit, a chair upholstered in Care Bears, a colorful cassette tape wall, an ethereal crescent moon and stars room, a cupcake room, a pinata room, a see-saw and pinwheel rainbow room, and many other rooms and elements that create the whole experience.

19. When it opened in Houston, The FOMO Factory got significant press and enjoyed healthy crowds. The revenue stream was good, and the company was making a profit. However, around the time of its opening, Ms. Youens discovered some devastating news. Prominent local business, Gallery Furniture, along with Gallery's business partner, Tov Furniture, had installed a number of pop-up art installations in their stores that were nearly identical to some of the rooms and creative elements on display at The FOMO Factory. Ms. Youens visited the Gallery Furniture stores where infringements of her original works were being displayed. She conducted some additional investigation and discovered that the furniture stores were using photo-friendly furniture displays, much like those in pop-up shops, to attract customers to come to the stores and take photos. The defendants were using pop-up art installations that copied at least five of the copyrighted works

installed in The FOMO Factory. Much like The FOMO Factory did for the entire Galleria by bringing additional foot traffic, the pop-up shop type displays would also draw potential customers into the Gallery Furniture stores.

20. Ms. Youens was horrified. She felt utterly violated. Several of the displays in the Gallery Furniture stores were exact duplicates of her copyrighted works, with others being substantially similar. Ms. Youens discovered that Gallery Furniture and Tov Furniture had hired the same artist she used to create the installations at Gallery Furniture. In spite of her prior assignment of all rights in the works to The FOMO Factory, the artist used the exact same artwork and props in the displays she created for Gallery Furniture and Tov Furniture.

21. The uniqueness and timing for an interactive art installation business like The FOMO Factory is everything. The life span of a social media pop-up store is six months to a year, maximum. The internet allows things to move fast and potential customers of a pop-up shop move on to the next thing very quickly. Ms. Youens found herself in a situation where her potential customer base, which would evaporate quickly under the best circumstances, now had a free alternative in Gallery Furniture and Tov Furniture displays. In early July, Ms. Youens explored her legal options and sent notices to Gallery Furniture and Tov Furniture that they had stolen her proprietary works and violated her copyrights. The notice to Gallery Furniture was copied to its celebrity owner, Jim "Mattress Mack" McIngvale.

22. The response from Tov Furniture's New York office was to refer to Ms. Youens' concerns as "one big joke." To make matters worse, they also threatened to bring corresponding legal action against The FOMO Factory in New York if Ms. Youens pursued legal action in Texas.

23. Ms. Youens considered her options and what she was up against. Prior communications with the parties resulted in inaction and threats. The only way to protect her intellectual property

and her business that she and her family had poured so much of themselves into was to take legal action. However, she believed that it would be impossible for her to finance copyright infringement litigation against anyone, let alone a large, well-funded and well-respected business in Houston. She believed that Gallery Furniture and Tov Furniture would get away with stealing her ideas, her dreams and that her business would inevitably fail as a result.

24. These events had a deep and overwhelming effect on Rachel Youens. Tragically, on July 17, 2019, Rachel Youens ended her own life.

## V. CAUSES OF ACTION

### COUNT 1 – COPYRIGHT INFRINGEMENT

25. Plaintiff created the following original works of art (the "Copyrighted Works"):

   1. Cassette Tape Wall Installation;

   2. Crescent Moon Wall Installation;

   3. Cupcake Wall Installation;

   4. Pinata Wall Installation; and

   5. Seesaw and Pinwheel Rainbow Wall Installation.

These Copyrighted Works constitute copyrightable subject matter under the laws of the United States. As copyright owner, plaintiff has the exclusive right to reproduction and distribution, to public visual or audio performance, and to public display of the Copyrighted Works, as well as to creation of derivative works based on the copyrighted works. Plaintiff has routinely applied a copyright notice or other copyright management information to each of its Copyrighted Works. These five Copyrighted Works represent five separate art installations present in several of the rooms at the The FOMO Factory.

26. This is an action under The Copyright Act of 1976 (17 U.S.C. § 101, *et seq.*) for

Defendants' infringement of the exclusive rights protected under the Act in Plaintiff's Copyrighted Works. Plaintiff complied in all respects with all formalities of the Copyright Act, 17 U.S.C. §101 et seq., and with all other laws governing copyrights. At all relevant times, plaintiff has been the holder of all the pertinent exclusive rights infringed by defendants, as alleged herein, including the Copyrighted Works and derivative works thereof.

27. Plaintiff, The FOMO Factory has obtained registration with the U.S. Copyright Office ("USCO") for each of the five above-listed Copyrighted Works, the details of which are tabulated below:

| TITLE | DATE OF PUBLICATION | DATE OF REGISTRATION | REGISTRATION NO. |
|---|---|---|---|
| 1. Cassette Tape Wall Installation | 9/13/2018 | 9/3/2019 | VA0002216877 |
| 2. Crescent Moon Wall Installation | 9/13/2018 | 9/3/2019 | VA0002209982 |
| 3. Cupcake Wall Installation | 9/13/2018 | 9/3/2019 | VA0002195464 |
| 4. Pinata Wall Installation | 9/13/2018 | 9/3/2019 | VA0002210004 |
| 5. Seesaw and Pinwheel Wall Installation | 9/13/2018 | 9/3/2019 | VA0002195240 |

28. Each of the Copyrighted Works were first published on 9/13/2018, and the applications resulting in the registrations were filed approximately one year later; thus, the effective date of each resulting registration is 9/3/2019. The certificates of registration have been received from the U.S. Copyright Office; thus, plaintiff now has standing to file suit as to all five of the registered Copyrighted Works.

29. At a time between the date of publication of the works and the effective registration date for the registrations of the Copyrighted Works, defendants began their infringement of plaintiff's copyrights by publishing and placing in the market pop-up art installations within their furniture

stores and in advertisements (including internet-based video ads) intended to attract customers and sell furniture. Several of these installations were copied from plaintiff's Copyrighted Works. Defendants have reproduced, distributed, performed, publicly displayed, and/or prepared derivative works based on the plaintiff's Copyrighted Works without the permission of the plaintiff. Specifically, defendants have copied plaintiff's Copyrighted Works in furniture displays to be used as backdrops and props for photographs to be posted online. The defendants have also used the plaintiff's Copyrighted Works in their advertising. Defendants had access to the Copyrighted Works by virtue of hiring the same artist contracted by plaintiff. The infringing works are strikingly similar to plaintiff's Copyrighted Works. For each of the five infringed works, the defendants incorporated identical or substantially similar design elements such as theme, size, color and spatial arrangement as well as specific objects in the copies such that ordinary observers, unless they set out to detect the disparities, would be disposed to overlook them and regard their appearance and appeal as the same.

30. Defendants willfully infringed plaintiff's Copyrighted Works entitling plaintiff to an award of enhanced damages up to the maximum allowed by statute.

31. The principals of the corporate defendants are vicariously liable for the copyright infringement of Gallery Model Homes, Inc. d/b/a Gallery Furniture and Tov Furniture, Inc. and have or have had a direct financial interest in the creation, use and/or publication of the furniture displays using the plaintiff's Copyrighted Works, and have or have had the power or ability to supervise and control the creation, use and/or publication of the furniture displays using the plaintiff's Copyrighted Works.

32. Defendants are each jointly and severally liable for plaintiff's actual damages, including lost profits and the defendants' profits attributable to the infringements.

34. Plaintiff notified defendants that defendants had infringed plaintiff's copyrights, but defendants continued to infringe the copyrights.

## VI.  REQUEST FOR PRELIMINARY INJUNCTION

35. Plaintiff seeks to enjoin defendants and their agents and representatives from reproducing, distributing, performing, publicly displaying, and/or preparing derivative works based on the plaintiff's Copyrighted Works, or otherwise using them in the course of scope of the work of defendants during this suit because this activity infringes plaintiff's Copyrighted Works.

36. There is a substantial likelihood that plaintiff will prevail on the merits. Defendants' materials are copies of plaintiff's copyrighted works because they contain the same colors, elements, design and overall appearance, and are therefore at minimum, substantially similar. Defendants had access to these copyrighted materials.  Plaintiff can prove it created the works by showing the copyright certificates.

37. If the Court does not grant a preliminary injunction, defendants will continue their activities that infringe plaintiff's copyrights. Defendants are in continuous operation and would not have the benefit of this new method of drawing customers into their stores using plaintiff's proprietary works but for the materials copied from plaintiff.

38. Plaintiff will likely suffer irreparable injury if the Court does not enjoin defendants from using plaintiff's Copyrighted Works because defendants will continue displaying copies of the works, which dilutes the uniqueness of plaintiff's business and eliminates and reduces the number of potential customers for plaintiff by providing a free alternative to plaintiff's offerings. In addition, by the use of plaintiff's copyrighted works, defendants are damaging the goodwill of plaintiff's business.

38. Defendants will not suffer undue hardship or loss as a result of the issuance of a preliminary

injunction. Defendants can continue to operate their business without the use of plaintiff's materials. Defendants are free to design their own displays to use in the same capacity or obtain them from some other source such that the displays used are not substantially similar to plaintiff's works.

40. Issuance of a preliminary injunction would not adversely affect the public interest.

41. Plaintiff asks the Court to set this request for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against defendants.

## VII. SEIZURE OF ARTICLES

42. Defendants' materials are the same as or substantially similar to plaintiff's Copyrighted Works. Plaintiff asks the Court to issue a writ of seizure against any infringing material in defendants' possession.

43. Plaintiff will likely suffer irreparable injury if the Court does not order the seizure of defendants' infringing material because temporary art installations utilized for taking photos meant to be posted on the internet have a very short shelf life. The timing and uniqueness of the photographic backdrops and props constitutes the entire value of the business. Unless plaintiff's materials are seized, the public and potential customers will associate the materials with defendants who are selling furniture and not in the same immersive interactive experience business as plaintiff. The value of plaintiff's work product will essentially be cheapened and the goodwill of plaintiff's business will be harmed.

44. Plaintiff is prepared to prosecute this suit promptly.

45. Plaintiff is prepared to return defendants' materials if they are not found to be infringing.

46. Plaintiff is prepared to pay any damages awarded by the Court if the seizure is ultimately

found to be improper.

47.   Plaintiff is prepared to post bond.

## VIII. DAMAGES

48.   As a direct and proximate result of defendants' conduct, plaintiff suffered the following damages:

   a.   Actual damages.

   b.   Lost profits.

   c.   Enhancement of actual damages for willful infringement.

## IX. JURY DEMAND

50.   Trial by jury is demanded on all issues so triable.

## X. PRAYER

51.   For these reasons, plaintiff asks for judgment against defendants for the following:

   a.   Defendants pay plaintiff for actual damages, plus the amount of defendants' profits attributable to the infringement as authorized by 17 U.S.C. §504(c).

   b.   Defendants pay plaintiff prejudgment and post-judgment interest, as authorized by law.

   c.   Defendants and their agents and representatives be enjoined during and after this suit from infringing plaintiff's copyrights in any manner and from publishing, selling, displaying, marketing, or otherwise disposing of any copies of the Copyrighted Works.

   d.   Defendants deliver to be impounded during this suit all print, electronic and three-dimensional copies of the Copyrighted Works in their possession or control and deliver for destruction all infringing copies and all means of making

      infringing copies.

e.    Defendants pay plaintiff additional damages for willfully infringing plaintiff's copyright, as authorized by 17 U.S.C. §504(c)(2).

g.    Plaintiff have all other relief the Court deems appropriate.

                      Respectfully submitted,

                      ADAIR MYERS STEVENSON YAGI, PLLC

                      By: /s/ Christopher A. Stevenson
                      Christopher A. Stevenson
                      Attorney-in-Charge
                      Texas Bar No. 24056381
                      S. D. Texas Bar No. 685207
                      Email: cas@am-law.com
                      Gordon G. Waggett
                      Texas Bar No. 20651700
                      S.D. Texas Bar No. 3214
                      Email: ggw@am-law.com
                      24 Greenway Plaza, Suite 1305
                      Houston, Texas 77046
                      Telephone: (713) 522-2270
                      Facsimile: (713) 522-3322

                      **ATTORNEYS FOR PLAINTIFF,**
                      **THE FOMO FACTORY, LLC**